STATE OF CONNECTICUT *v.* RAFAEL CRESPO, JR.
(SC 18403)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan,
Eveleigh and Vertefeuille, Js.*

---

* This case was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille. Although Justice Palmer was not present when the case was argued before the court, he read the record, briefs and transcript of oral argument prior to participating in this decision.

Argued September 7, 2011—officially released January 31, 2012

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Rafael Crespo, Jr., appeals, following our grant of certification,[1] from the judgment of the Appellate Court, which affirmed the defendant's conviction of assault in the third degree in violation of General Statutes § 53a-61 (a) (1)[2] and two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[3] The defendant's conviction stemmed from allegations that he had forcibly engaged in sexual intercourse with the victim and physically assaulted her on several occasions during their relationship.

On appeal, the defendant challenges the Appellate Court's conclusion that his constitutional rights to confrontation and to present a defense were not violated

[1] This court granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly uphold the trial court's preclusion of impeachment evidence regarding the [victim's] prior sexual conduct?" *State* v. *Crespo*, 292 Conn. 917, 973 A.2d 1276 (2009).

[2] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

when the trial court excluded impeachment evidence regarding the victim's prior sexual conduct. We conclude that the trial court properly excluded the evidence on the grounds offered by the defendant and that the exclusion of this evidence did not violate the defendant's constitutional rights. Accordingly, we affirm the judgment of the Appellate Court.

I

The following facts and procedural history are relevant to this appeal. "The defendant met the victim during the summer of 2002, and the two began dating. At [all relevant] times . . . the defendant was a police officer and the victim was a college graduate student. In the months prior to December, 2002, the two engaged in sexual activities together, but this conduct did not include vaginal or anal intercourse." *State* v. *Crespo*, 114 Conn. App. 346, 348–49, 969 A.2d 231 (2009). At trial, the victim testified that, in December, 2002, the defendant "penetrated" her vaginally against her will and that, prior to that time, she had been a virgin who never had had a boyfriend. The victim initially did not report this incident to the police or any medical personnel[4] but testified that she felt that a part of her had been "murdered" or "killed." "On February 4, 2003, the victim sought medical attention at a college health clinic. Although the victim reported to a nurse that she had been [sexually assaulted], the victim declined to report the incident to the police. The victim believed that if she were to report the incident, the defendant's status as a police officer would protect him and that he would retaliate against her." *State* v. *Crespo*, supra, 349.

"Following this incident, the victim's physical and psychological well-being suffered. The victim took

---

[4] The victim later reported this incident to the police, and the state charged the defendant with one count of sexual assault in the first degree in connection with this incident, but the jury returned a not guilty verdict as to this count.

steps to distance herself from the defendant. . . .
Nonetheless, the victim's relationship with the defendant continued, and she accepted favors and gifts from
the defendant and, on occasion, accepted his invitations
to dinner and the like." Id. The victim testified at trial
that, during this period of time, the defendant was prone
to violent outbursts, both verbal, such as threatening
remarks directed at the victim, and physical, such as
pulling the victim's hair.[5] "The defendant told the victim
that he wanted to end their relationship, yet the defendant thereafter contacted the victim. . . . Although the
victim feared the defendant, she continued to spend
time with him, often in public settings, and did not
report any incidents of abuse to law enforcement personnel." Id., 349–50.

Around this time, in June, 2003, the victim traveled
without the defendant to Colorado to visit her family
and to attend a funeral. Although the victim was out
of the state for only a few days, the defendant had
requested that the victim call him while she was away.
The victim called the defendant when she arrived in
Colorado but did not speak to him for the remainder
of her trip. When the victim returned to Connecticut,
the defendant surprised her by meeting her at the airport gate. The victim testified that the defendant
appeared cold and unhappy, and remained silent as he
drove the victim back to her apartment. The defendant
accompanied the victim into her apartment and, once
inside, proceeded to play the messages stored on the
victim's answering machine. The victim testified that
the messages were primarily from men who had met
the victim's sister and were interested in seeing her
again, as well as from one of the victim's friends who
wanted to "get together" with the victim. The victim
further testified that the defendant, upon hearing these
messages, became angry and started verbally and physi-

---

[5] No charges were brought in connection with these incidents.

cally assaulting the victim. The victim testified that, soon thereafter, the incident escalated, and the defendant forced her to the ground, ripped off her clothes, and engaged in vaginal intercourse with her against her will.[6] The defendant then left the victim's apartment. "The victim reported this assault to her mother but not the police. Shortly after this incident, the defendant sent the victim an e-mail in which he expressed his intent to stop interacting with the victim. Nevertheless, the defendant later resumed having contact with the victim." Id., 351.

"On May 15, 2004, the defendant drove to the victim's place of employment, and the victim permitted the defendant to take her shopping and to a movie. The defendant drove the victim to a shopping mall, where he purchased undergarments for her. Later, while the two were watching a movie, the defendant became upset with the victim and hastily left the movie theater. The victim left the theater with the defendant in his automobile. Following a dispute over the victim's sunglasses, the defendant became more and more agitated while driving the victim home. He began striking his steering wheel and was brandishing [his] gun. The defendant drove his automobile into a parking lot where he began to [assault] the victim. The victim exited the automobile, but the defendant pursued her and continued to strike her. The defendant kicked the victim, causing her to fall to the ground. Among her injuries, the victim sustained a significant elbow injury. When the victim was unable to rise from the pavement, the defendant drove away from the scene. Several minutes later, the defendant returned and forced the victim into

[6] In connection with this incident, the state charged the defendant with one count of assault in the third degree and one count of sexual assault in the first degree. Following the jury's guilty verdict on both counts, the court dismissed the third degree assault count as being beyond the statute of limitations; the defendant was convicted of the first degree sexual assault count.

the automobile by pulling her hair and pushing her into the passenger seat."[7] Id.

"In the following days, the victim sought treatment for her injuries from medical personnel . . . . The victim told a nurse and a physician that her boyfriend had beaten and sexually assaulted her. . . . Despite discussing her claims of abuse with these individuals . . . the victim declined to report the incidents of abuse to the police." Id., 352.

"In mid-June 2004, on the victim's birthday, the defendant called the victim at her place of employment approximately fifty times. The victim agreed to go to dinner with the defendant. After dinner, the two returned to the victim's residence." Id. The victim testified that, as soon as she and the defendant entered her apartment, the defendant disrobed and accused the victim of staining his clothes with juice during dinner. The victim responded that she did not believe that she had caused any stain, at which point the defendant became agitated and eventually forced the victim to have vaginal intercourse. The victim testified that she did not resist him initially; however, the defendant then turned the victim on her stomach and forced her to engage in anal intercourse, which the victim attempted to resist to no avail. The defendant then left the victim's apartment while she was showering.[8]

---

[7] The defendant was convicted of assault in the third degree in connection with this incident. Immediately following this incident, the defendant returned to the spot where he had left the victim and drove her back to his parents' home in accordance with the victim's wishes. "The victim claimed that the defendant forcibly engaged in anal intercourse with her during her stay at his parents' home. The state charged the defendant with sexual assault in the first degree in connection with this claim, but the jury returned a verdict of not guilty as to this charge. Additionally, the victim claimed that the defendant kept her at his parents' home against her will. The state charged the defendant with kidnapping in the second degree in connection with this claim, but the jury returned a verdict of not guilty as to this charge." *State* v. *Crespo*, supra, 114 Conn. App. 352 n.6.

[8] The defendant was convicted of sexual assault in the first degree in connection with this incident.

Following this incident, the victim limited her interaction with the defendant. The victim and the defendant did not spend much time with each other, but the defendant continued to send the victim e-mails, which she responded to occasionally. The victim also would call the defendant frequently, in part to keep apprised of his whereabouts. In December, 2004, the victim met with police for the first time to report the incidents of abuse. The defendant was arrested soon thereafter.

"At trial, the defendant acknowledged that he and the victim had been in a stormy romantic relationship but denied that he had threatened or assaulted her. The defendant testified that he and the victim had engaged in consensual sexual intercourse shortly after they began dating in June, 2002. With regard to the injury to the victim's elbow, for which she had received medical attention, the defendant testified that it occurred accidentally, not during a physical assault. The defendant testified that he had given the victim numerous types of assistance, including financial assistance, during their relationship but that she was possessive, jealous and, at times, irrational during her interactions with him. He testified that he voluntarily had ended his relationship with the victim in November, 2004." Id., 353.

After the trial court rendered judgment of conviction on two counts of first degree sexual assault and one count of third degree assault, the defendant appealed to the Appellate Court, claiming that the trial court improperly excluded, in accordance with General Statutes § 54-86f,[9] certain evidence relating to the victim's

[9] General Statutes § 54-86f provides in relevant part: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is . . . (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct . . . or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of

prior sexual history, in violation of his constitutional rights to confrontation and to present a defense.[10]

The Appellate Court rejected the defendant's claim and concluded that the trial court properly excluded evidence of the victim's prior sexual conduct in accordance with § 54-86f. See id., 363. Specifically, the Appellate Court agreed with the trial court's ruling that this evidence was not relevant to any material issue in the case and thus was properly precluded on that ground. Id. With regard to the defendant's constitutional claims, the Appellate Court concluded that, because the evidence was not relevant, its exclusion did not implicate any constitutional concerns: "[T]he defendant fully availed himself of his right to present evidence from which the jury could evaluate the victim's credibility." Id., 364. "The record reflects that, during the trial, the defendant vigorously cross-examined the state's witnesses and presented much evidence in support of his theory of defense." Id., 365. Finally, the Appellate Court addressed the defendant's claim that the state's elicitation of testimony from the victim that she was a virgin triggered the defendant's right to introduce evidence of the victim's prior sexual conduct to refute her credibility under § 54-86f (2). Id. Because the defendant had not raised this specific argument at trial, the Appellate Court reviewed this unpreserved claim, in conjunction with the defendant's broader claim that exclusion of the proffered evidence violated his constitutional rights,

proof. . . . If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . ."

[10] On appeal to the Appellate Court, the defendant also advanced two additional claims as grounds for reversing the judgment of conviction. See *State* v. *Crespo*, supra, 114 Conn. App. 368, 376. The Appellate Court rejected those claims; see id.; and the defendant has not appealed the Appellate Court's rejection of those claims.

under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The court concluded, however, that the defendant's claim failed under the third prong of *Golding*[11] because "the preclusion of irrelevant evidence does not infringe on a defendant's right to confrontation or his right to present a defense." *State* v. *Crespo*, supra, 114 Conn. App. 367. The Appellate Court further concluded that the evidence proffered by the defense "did not contradict the victim's testimony regarding . . . her virginity" and, therefore, rejected the defendant's claim that "the proffered evidence was relevant to the issue of the victim's credibility." Id., 368. The Appellate Court accordingly affirmed the judgment of conviction, and this certified appeal followed.

II

The defendant claims that the Appellate Court incorrectly upheld the trial court's preclusion of impeachment evidence regarding the victim's prior sexual conduct, following the victim's testimony on direct examination that she was a virgin and never had a boyfriend before the first sexual assault. The defendant argues that the trial court abused its discretion when it excluded evidence of the victim's prior sexual conduct and her relationship with another man before, and perhaps during, the victim's relationship with the defendant, and that this ruling violated his constitutional rights to confrontation and to present a defense by preventing the defendant from impeaching the victim. Specifically, the defendant contends that the evidence was relevant and admissible under § 54-86f (4) to establish her bias or motive to falsely accuse the defendant of sexual assault, and under § 54-86f (2) as evidence impeaching her credibility after the victim

---

[11] In order to prevail on an unpreserved claim of constitutional error, a defendant must establish under the third prong of *Golding* that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. *State* v. *Golding*, supra, 213 Conn. 240.

testified regarding her sexual conduct on direct examination. The defendant further argues that, because the victim was the sole witness to the charged crimes and because there was no other direct evidence of the sexual assaults that would substantiate the victim's testimony, his inability to impeach the victim violated his rights to confrontation and to present a defense, and, accordingly, the preclusion of this evidence warrants reversal of his conviction on all counts.

The state claims that the trial court properly exercised its discretion when it excluded the proffered evidence on the ground that it was irrelevant and otherwise barred by § 54-86f. The state contends that the Appellate Court correctly determined that the defendant's constitutional rights were not violated and that defense counsel's cross-examination of the victim was sufficient to protect the defendant's constitutional rights. The state further notes, as did the Appellate Court; see id., 365; that the defense never raised § 54-86f (2) in the trial court as a ground for admitting the proffered evidence. Therefore, the state contends, the Appellate Court correctly determined that the unpreserved claim did not satisfy the third prong of *Golding* because the evidence was irrelevant, and, therefore, its exclusion did not implicate the defendant's sixth amendment rights. We agree with the state that the trial court properly excluded the proffered evidence and that its exclusion did not violate the defendant's constitutional rights.

The following additional facts are relevant to our resolution of this issue. Before the start of the trial, the state filed a motion in limine seeking to exclude evidence of the victim's prior sexual conduct in accordance with § 54-86f. The state sought to prevent the admission of this evidence unless the procedure set forth in § 54-86f was followed, namely, that an offer of proof be made initially outside the presence of the jury and that a ruling be issued prior to any evidence being

admitted.[12] The court issued a preliminary ruling that any evidence of prior sexual conduct between the victim and persons other than the defendant would be considered for admission only if the procedures of § 54-86f were followed.

During the presentation of the state's case-in-chief, the state called the victim to testify. On direct examination, the state questioned the victim regarding her prior sexual experience. The victim testified that, in the initial phase of her relationship with the defendant, the two engaged in "sexual activity," but not of the type that the victim considered "real sex," that is, there was no "actual penetration . . . ." The state then elicited testimony from the victim that, prior to meeting the defendant, she had had no boyfriends, was physically a virgin and never had had intercourse with anyone.[13]

On cross-examination, the victim testified regarding her relationship with Gordon Anic. She described Anic as a relative of her aunt who was a pastor in Colorado. During the victim's undergraduate studies, Anic helped pay for her tuition and other educational costs; he also provided the victim with personal spending money. At this point in the examination, defense counsel asked the court to excuse the jury and then presented the court with an offer of proof to introduce into evidence the victim's prior sexual conduct, specifically, the vic-

---

[12] Specifically, the assistant state's attorney stated that "the only thing that I'm asking is if any evidence of [other sexual conduct] is going to be offered that it be—follow the procedures that are in that section, that the jury be excused, the offer be made, and we have a chance to argue and get the court to rule on it before it comes out before the jury. . . .

"[T]here is no question that prior sexual activity between the defendant and the victim is all a part of this process. So we're not raising that portion as a bar . . . . But anything beyond activity between [the] defendant and the victim—I think we should just follow the procedures that are outlined."

[13] The victim later testified, on cross-examination, that she wanted to maintain her virginity until marriage and did not want to have sex until she was married or at least engaged to be married.

tim's sexual relationship with and possible engagement to Anic. Defense counsel advanced two grounds for admitting the evidence: (1) to show the victim's bias, motive and interest in fabricating allegations of sexual assault; and (2) to demonstrate that she was deceptive throughout her relationship with the defendant. The court rejected both of these claims, stating: "[The victim's] engagement to another person simultaneously with her relationship with the defendant is admissible as an area for cross-examination. Her acceptance of money during these times from another man is—the same person—is admissible. But, I mean, unless you have a good faith basis to ask questions which [undermine] her claim in front of this jury that she was a virgin prior to June, 2002, I see [§ 54-86f] as precluding inquiry into those areas."

After recommencing cross-examination, defense counsel questioned the victim about additional details of her relationship with Anic when the victim was in a relationship with the defendant. The state objected to this line of questioning and asked that the jury again be excused from the courtroom. In the discussion that followed, defense counsel made clear that he sought to introduce police reports in which the victim discussed details of her relationship with Anic that she may not have disclosed to the defendant. Defense counsel asserted that the evidence was relevant to determining the nature of her relationship with Anic. The court ruled that the evidence was inadmissible "as an area that's not going to be probative for the jury's point of view in terms of assessing [the victim's] credibility [because] it is necessarily going to get into [the victim's sexual conduct] which I've ruled out of the case." Defense counsel raised no further objections or arguments regarding this evidence at trial.

As we stated previously, the defendant claims that these rulings, pursuant to which the court excluded

evidence of the victim's prior, and perhaps continuing, relationship with a person other than the defendant, violated the defendant's constitutional rights to confrontation and to present a defense. The defendant's claim is premised on the proper application of § 54-86f. The defendant contends that the evidence should have been admitted under one of the exceptions set forth in § 54-86f.

"Section 54-86f provides for a two step process before evidence proffered by a defendant as falling under one of the statute's exceptions may be admitted. First, if the defendant has satisfied his preliminary burden in his offer of proof to show that the evidence is potentially relevant, pursuant to the statute the trial court must conduct a hearing to determine the admissibility of the evidence. Second, [i]f, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. . . .

"In the first step of this two part process, the defendant bears the burden of showing that the proffered evidence overcomes the presumption, inherent in § 54-86f, that evidence of the sexual conduct of a [sexual assault] victim is inadmissible and satisfies the statute's requirement that only evidence relevant to the case, rather than evidence relevant merely to demonstrate the unchaste character of the victim, be admissible. . . .

"If the trial court determines that the evidence is relevant and admissible under one of the exceptions enumerated in § 54-86f, the trial court must proceed to the second part of the two part process outlined in the statute. That is, the evidence is admissible only if its probative value outweighs the prejudicial impact on the victim. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . In considering whether evidence was sufficiently relevant to fall under one of the exceptions enumerated in § 54-86f, we have drawn a distinction between, on the one hand, evidence that is relevant to establish some portion of the theory of defense or rebut some portion of the state's case, which is admissible if the court determines that the probative value of the evidence outweighs its prejudicial impact on the victim, and, on the other hand, evidence that is offered as an impermissible attempt to establish the victim's general unchaste character as prohibited by [§ 54-86f]." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 280 Conn. 285, 295–97, 907 A.2d 73 (2006).

We first review the defendant's preserved claim of evidentiary error under § 54-86f (4). In the present case, defense counsel proffered two grounds of relevance at trial for introducing evidence of the victim's prior sexual conduct with a person other than the defendant: (1) to demonstrate that the victim had a motive, bias or interest in fabricating her allegations of sexual assault; and (2) to undermine the victim's credibility by demonstrating that she was deceptive in how she portrayed herself to the defendant. Defense counsel asserted that both of these grounds fit within the exception under § 54-86f (4), allowing the defense to introduce otherwise inadmissible evidence of the victim's prior sexual conduct.[14]

---

[14] On appeal, the defendant claims that both subdivisions (2) and (4) of § 54-86f provide bases for admitting the proffered evidence at trial. As the

General Statutes § 54-86f (4) provides that a defendant may introduce otherwise inadmissible evidence of a victim's sexual conduct if that evidence is "otherwise so *relevant* and *material* to a critical issue in the case that excluding it would violate the defendant's constitutional rights." (Emphasis added.) "Whenever [§ 54-86f's] preclusion of prior sexual conduct is invoked, a question of relevancy arises. If the evidence is probative, the statute's protection yields to constitutional rights that assure a full and fair defense. . . . When the trial court excludes defense evidence that provides the defendant with a basis for cross-examination of the state's witnesses, [despite what might be considered a sufficient offer of proof] such exclusion may give rise to a claim of denial of the right[s] to confrontation and to present a defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 177–78, 777 A.2d 604 (2001).

We conclude, with regard to the defendant's claim of relevance raised at trial under § 54-86f (4), that the trial court properly excluded the proffered evidence as irrelevant for the purpose of establishing the victim's bias, motive or interest. At trial, defense counsel argued that the proffered evidence of the victim's prior sexual conduct was relevant and admissible under § 54-86f (4), specifically because "she engaged in conduct [with the defendant] which is exactly similar with . . . Anic as she was getting money and . . . financial support and aid; in that, if [the defendant] broke up with her, she

Appellate Court noted, however, the defense failed to raise any claim relating to § 54-86f (2) at trial, relying solely on § 54-86f (4) as the relevant exception. We therefore limit our review in part II of this opinion to the grounds that were raised at trial under § 54-86f (4). To the extent that they require additional analysis, we further review those grounds in part III of this opinion, as well as the additional grounds raised on appeal in connection with the defendant's unpreserved claim that his constitutional rights were violated as a result of the preclusion of the proffered evidence.

would have a reason to be upset with him." As we previously noted, the trial court allowed defense counsel to question the victim about whether she was engaged to and accepted money from Anic before or while she was in a relationship with the defendant. Nevertheless, it excluded evidence regarding her prior sexual activity with Anic. The trial court reasoned that her prior sexual acts were irrelevant to understanding the victim's motive, reason or bias and that, unless the defense could produce evidence contradicting the victim's claim of virginity, § 54-86f precluded inquiry into those acts. It was not an abuse of the court's discretion to limit the scope of defense counsel's cross-examination in light of the proffered grounds of relevance under § 54-86f (4). As the Appellate Court noted, "[w]e fail to see how evidence that the victim and Anic had engaged in sexual activities would have strengthened to any degree the defendant's argument that the victim was motivated to fabricate claims of sexual assault because the defendant had ended his relationship with her. . . . [T]his argument is too far attenuated from any material issue in the case to justify the admission of this evidence." *State* v. *Crespo*, supra, 114 Conn. App. 363.

### III

The defendant further contends that the proffered evidence also was relevant to impeach the victim and to cast doubt generally on the victim's credibility. The defendant also claims that the state, in eliciting testimony from the victim about her virginity on direct examination, "opened the door to her prior sexual history" under § 54-86f (2). Contrary to the defendant's assertions, the record is devoid of any such claims of relevance in the trial court. The record clearly demonstrates that the sole ground for admission offered by the defense at trial was under § 54-86f (4). At no time did defense counsel explicitly or implicitly claim that

the proffered evidence was admissible under § 54-86f (2) or that the evidence was admissible because the state opened the door to it on direct examination.

The defendant nevertheless seeks to have this claim reviewed under *Golding*, arguing that, because the evidence was relevant to the victim's credibility, the trial court's exclusion of the evidence violated the defendant's rights to confrontation and to present a defense. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 239–40.

The first prong of *Golding* is satisfied in the present case. The arguments of defense counsel at trial regarding the admissibility of this evidence to show the victim's motive, bias and interest; see part II of this opinion; provide an adequate record for review of the defendant's constitutional claim. With regard to the second prong, although the defendant's unpreserved claim is evidentiary in nature, the issues implicated in this case are of constitutional magnitude. See, e.g., *State* v. *Calvin N.*, 122 Conn. App. 216, 224–25, 998 A.2d 810 ("although the claim centers around the court's preclusion of evidence, it is not merely evidentiary in nature, but fundamentally implicates the defendant's sixth

amendment right to confront his accuser and, therefore, satisfies *Golding*'s second prong"), cert. denied, 298 Conn. 909, 4 A.3d 834 (2010). Put differently, it does not appear that the defendant is simply trying to "put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Toccaline*, 258 Conn. 542, 550, 783 A.2d 450 (2001). Rather, the defendant argues that the inability of defense counsel to fully cross-examine the sole complaining victim in a legitimate area of inquiry deprived the defendant of his constitutional right to confrontation. He maintains that, because the defense was not allowed to introduce evidence of the victim's prior sexual acts, the state was able to portray the victim to the jury in an unfair manner. See, e.g., *State* v. *Cavell*, 235 Conn. 711, 720, 670 A.2d 261 (1996) ("under particular circumstances, the unjustified exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense").

To be sure, our *Golding* jurisprudence with regard to unpreserved evidentiary claims has not always been entirely clear or consistent as to when such claims are truly of constitutional magnitude. Often, we have rejected, without further review, claims of evidentiary error under the second prong of *Golding* as patently failing to demonstrate constitutional error, particularly when the constitutional claim involves an alleged, generalized due process violation. See, e.g., *State* v. *Bowman*, 289 Conn 809, 819–21, 960 A.2d 1027 (2008) (defendant's unpreserved claim of improperly admitted photographic evidence failed under second prong of *Golding* because claim was matter of evidentiary law and not of constitutional magnitude); see also *State* v. *Mullins*, 288 Conn. 345, 374 n.14, 952 A.2d 784 (2008) (defendant's unpreserved claim regarding improper application of evidentiary privilege failed under second prong of *Golding* because "it [was] not of constitutional dimension"). In some instances, however, although we

have purported to deem a defendant's unpreserved evidentiary claim unreviewable under the second prong of *Golding*, we reached that conclusion only after engaging in a review of the record, otherwise akin to our analysis under the third prong of *Golding*. See, e.g., *State* v. *Carpenter*, 275 Conn. 785, 813–14, 820–21, 882 A.2d 604 (2005) (defendant's claim that admission of certain hearsay evidence violated her right to confrontation was evidentiary in nature and thus failed under second prong of *Golding*, but court engaged in three page review of record to reach its conclusion), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006); *State* v. *Toccaline*, supra, 258 Conn. 547–51 (defendant's unpreserved claim regarding improper admission of expert testimony was unreviewable under *Golding*'s second prong, but thoroughly reviewing record to reach this determination); *State* v. *Whipper*, 258 Conn. 229, 277–79, 780 A.2d 53 (2001) (defendant's unpreserved claim regarding improperly admitted testimony failed under second prong of *Golding*, but court reviewed record to reach that determination), overruled in part on other grounds by *State* v. *Cruz*, 269 Conn. 97, 848 A.2d 445 (2004). In a third category of cases, we have summarily decided that the defendant's evidentiary claim on its face was one of constitutional magnitude, satisfying the second prong of *Golding*, but concluded, after reviewing the record, that the claim failed under the third prong because the alleged constitutional violation did not clearly exist. See, e.g., *State* v. *Estrella*, 277 Conn. 458, 468–76, 893 A.2d 348 (2006) (reviewing defendant's unpreserved claim regarding admission of probable cause hearing testimony because it implicated defendant's right to confrontation but concluding that defendant could not prevail under *Golding*). Finally, we have decided that a defendant's unpreserved *evidentiary* claim fails under *Golding* without stating explicitly the specific prong that was not satisfied; see, e.g., *State* v. *King*, 249 Conn. 645,

676–80 and n.39, 735 A.2d 267 (1999) (noting that defendant sought to prevail under *Golding* but concluding that defendant's claim of improper restriction on cross-examination was evidentiary, not constitutional); *State* v. *Pratt*, 235 Conn. 595, 602–606, 669 A.2d 562 (1995) (same); and, on at least one occasion, we have held that the defendant's claim fails under both the second and third prongs of *Golding. State* v. *Schiappa*, 248 Conn. 132, 164–65, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

We need not decide the most appropriate approach at this juncture.[15] In the present case, the state concedes that the defendant has satisfied the first two prongs of *Golding* and relies on the reasoning of the Appellate Court, namely, that his claim fails under the third prong. See *State* v. *Crespo*, supra, 114 Conn. 366–67 ("[t]he record is adequate to review this aspect of the defendant's claim, and it is of constitutional magnitude" but "[w]e conclude . . . that the claim fails under *Golding*'s third prong"); see also *State* v. *Golding*, supra,

[15] Indeed, as neither party has raised or briefed this issue, it would be imprudent for this court to answer it in the present case. Nevertheless, we perceive a problem in our *Golding* jurisprudence, with regard to review of unpreserved evidentiary rulings that a party claims have resulted in a generalized due process violation, that is, the right to a fair trial, as opposed to a violation of a specific right such as the right of confrontation. This stems from confusion over the proper application of the second and third prongs. The confusion results from the following. With regard to *preserved* claims of evidentiary error, the erroneous evidentiary ruling will be reversed on appeal only when the magnitude of the error is so severe that it rendered the trial unfair. For that reason, *any* claim of evidentiary error—preserved or not—premised on a generalized violation of a party's due process right is constitutional in nature if the harm resulting from the error is sufficient to require a new trial. Thus, any *unpreserved* claim of evidentiary error premised on a generalized due process violation will necessitate a review of the full record—in effect, the analysis required by *Golding*'s third prong—to determine whether the claim is indeed constitutional in nature in order to satisfy *Golding*'s second prong. This seemingly will lead to the actual review of virtually all unpreserved evidentiary claims, even in cases in which we have held that the claim is unreviewable because it fails under *Golding*'s second prong. See, e.g., *State* v. *Carpenter*, supra, 275 Conn. 813–14, 820–21.

213 Conn. 240 ("[t]he appellate tribunal is free . . . to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances"). We agree with the state.

The defendant has not demonstrated that the alleged constitutional violation—premised on his constitutional right to confrontation[16]—clearly exists. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him . . . . Nonetheless . . . [t]he defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process." (Citation omitted; internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 54–55, 644 A.2d 887 (1994).

"In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 71, 762 A.2d 1278 (2000). "We have emphasized in numerous decisions, however, that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . A defendant may

---

[16] We analyze the defendant's claim under the federal constitution. Although the defendant also attempts to claim that his rights to confrontation and to present a defense were violated under the state constitution; see Conn. Const., art. I, § 8; he has not adequately briefed this claim, instead relying almost solely on federal precedent or Connecticut precedent analyzing the federal constitutional rights. We will not review inadequately briefed state constitutional claims and, therefore, decline to address this aspect of the defendant's claim. See *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 812–13 n.15, 730 A.2d 1149 (1999) ("[i]f a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart . . . we will not of our own initiative address that question").

elicit only relevant evidence through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Citations omitted; internal quotation marks omitted.) Id.

We assume without deciding, for the purposes of this appeal, that the proffered evidence may have been relevant for the purpose of impeaching the victim, or, at the very least, undermining her credibility and portraying her more fairly to the jury. We find such an assumption acceptable particularly in light of the fact that the state elicited from the victim on direct examination testimony of her prior sexual history and relationships.[17] Cf. *State* v. *Ritrovato*, 280 Conn. 36, 53–54, 905 A.2d 1079 (2006) ("The state introduced evidence during its case-in-chief that [the victim] was a virgin at the time of the first sexual assault. Such testimony was not necessary to prove an element of the crime but, upon repetition, became inextricably bound with the state's narrative, thus injecting an emotional element into the trial that made the contemptible act with which the defendant was charged seem even more offensive. . . . [T]he proffered testimony did not constitute inadmissible extrinsic evidence of a collateral matter . . . but was highly [relevant and] probative on the issue of [the victim's] credibility . . . ." [Citation omitted.]). Our analysis of the defendant's constitutional argument does not end here, however.

[17] To that end, we underscore that the state proceeds down a potentially dangerous testimonial path in a sexual assault case any time it questions the victim about his or her prior sexual activity. When the state elicits testimony from the victim "on direct examination as to his or her sexual conduct," it opens the door to inquiry regarding the victim's sexual conduct "offered by the defendant on the issue of *credibility* of the victim . . . ." (Emphasis added.) General Statutes § 54-86f (2). Put differently, the state should not expect to rely on § 54-86f as both a prosecutorial sword and a victim's shield.

"In determining whether the cross-examination of [the victim] was unduly restricted it is the *entire* cross-examination which we must examine." (Emphasis added.) *State* v. *Asherman*, 193 Conn. 695, 721, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). "[W]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Brown*, 273 Conn. 330, 340, 869 A.2d 1224 (2005). Viewed in light of these considerations, we cannot conclude that the defendant was deprived of his constitutional right to confront the victim when the court excluded evidence of her alleged prior sexual activity with Anic. As we noted in part II of this opinion, during cross-examination of the victim, the court specifically allowed defense counsel to inquire into virtually all areas of the victim's relationship with Anic. The only evidence the court precluded concerned the specific sexual acts that the victim allegedly engaged in with Anic during the course of their relationship. The court specifically allowed defense counsel to question the victim about any prior or continuing engagement to Anic. Further, even assuming that the state opened the door by questioning the victim about her virginity on direct examination, thereby making relevant the issue of the victim's sexual past, we cannot reasonably conclude that the inability of the defense to pursue this narrow line of questioning violated the defendant's right to confrontation.

Indeed, nothing in the record demonstrates that the trial court restricted defense counsel's ability to cross-examine the victim in order to impeach or otherwise to discredit her. The defendant's failure to raise this ground of relevance prevented the trial court from ruling on its admissibility on that ground. We previously

have explained that "[a] clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose." (Internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 825, 970 A.2d 710 (2009); see also id., 825–30 (upholding trial court's decision to exclude evidence under § 54-86f and concluding that such exclusion did not violate defendant's right to confrontation because defendant "had failed to make the necessary offer of proof . . . and . . . the evidence . . . was not relevant"); *State* v. *Banks*, 117 Conn. App. 102, 111, 978 A.2d 519 ("[t]here was no specific ruling on [the] issue [of whether defense counsel could question the witness regarding certain pending criminal charges to establish motive, bias or interest], and therefore . . . [the] claim fail[ed] under the third prong of *Golding* because the defendant [did not show] that a constitutional violation clearly exist[ed]"), cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009); cf. *State* v. *Samuels*, 273 Conn. 541, 570, 871 A.2d 1005 (2005) ("If defense counsel was concerned, he could have cross-examined [the witnesses] or objected to their testimony on sixth amendment grounds. He did neither. Accordingly . . . the defendant's confrontation clause claim must fail . . . .").

For this reason, the defendant's reliance on *Ritrovato* is misplaced. In that case, the trial court excluded evidence, under § 54-86f, offered by the defendant to contradict testimony of the victim that she had been a virgin prior to her contact with the defendant. See *State* v. *Ritrovato*, supra, 280 Conn. 44. The trial court reasoned that such testimony was barred because the witnesses offered by the defense were not credible and because the proffered evidence was more prejudicial than probative. Id., 49–50. We concluded that the victim's "description of her two conversations with the defendant, in which she told him that she was a virgin, her testimony that the defendant took her virginity and

her testimony regarding the notation on her calendar [that her first sexual encounter was with the defendant], clearly meet the threshold requirement for the admission of impeachment evidence under § 54-86f (2)." Id., 51. Notwithstanding these similar considerations in the present case, the defense chose to pursue a line of argument at trial based wholly on trying to address the victim's motive, bias or interest rather than on impeaching or discrediting her testimony. *Ritrovato* is thus distinguishable and inapplicable to the defendant's claim on appeal.

There is nothing in the record that states or suggests that the trial court otherwise limited cross-examination of the victim or prevented defense counsel from challenging her credibility. The defendant has failed to show a clear violation of his constitutional rights and, therefore, is not entitled to prevail under *Golding*.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.