******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LUIS
ANTONIO SANTANA
(SC 18713)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and
Vertefeuille, Js.

*Argued February 20—officially released September 9, 2014*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Robert O'Brien*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The dispositive issue in this appeal[1] is whether the defendant, Luis Antonio Santana, preserved his claim that statements contained in a search warrant affidavit should have been admitted into evidence under the hearsay exception for a statement by a party opponent pursuant to § 8-3 (1) (B) of the Connecticut Code of Evidence.[2] The defendant was charged with one count of murder in violation of General Statutes § 53a-54a, one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, and one count of carrying a pistol without a permit in violation of General Statutes § 29-35 for his role in the shooting death of the victim, Aaron McCrea. At trial, the defendant sought to introduce witness statements contained in a search warrant affidavit that he claimed implicated individuals other than himself in the shooting. The state objected on the ground that the statements were hearsay, and the defendant responded that the statements were not inadmissible hearsay. The trial court sustained the objection, and the defendant subsequently was convicted of all charges.

On appeal, the defendant claims that, although he did not reference any hearsay exception, he functionally preserved the claim. Moreover, the defendant argues that the trial court violated his constitutional right to present a defense of third party culpability when it precluded him from questioning a police officer about the witness statements. The state counters that the defendant failed to properly preserve this claim before the trial court and that the claim is not of a constitutional nature. The state contends, therefore, that this court should not review the defendant's claim. We agree with the state that the defendant failed to preserve his claim, functionally or otherwise, and that it is not of a constitutional nature such that review is warranted pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Thus, we decline to review the claim, and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts, which the jury reasonably could have found, and procedural history. At approximately 4 p.m. on September 17, 2006, the defendant and Geraldo Rosado shot the victim in a grassy area between Portsea Street and Loop Road in New Haven, and then ran away. When the police arrived shortly thereafter, the victim was nonresponsive. He died from multiple gunshot wounds.

After the shooting, the defendant and Rosado went to the home of Juan Nunez. Nunez spoke to the men, and after they left, took a blue nylon bag containing a nine millimeter pistol and a .38 caliber revolver into his bedroom where his girlfriend, Ligny Rivera, was resting. Nunez wiped the handguns with an orange shirt, placed

them back in the nylon bag along with the shirt, and put the bag on the side of his bed.

Two days later, the police went to Nunez' home to execute a search warrant. While the police were knocking on the door, Nunez ran out of his bedroom, down the back stairs, and returned shortly thereafter. Nunez' mother then allowed the police to enter. On the back stairwell of the basement entryway, the police found a blue nylon bag that contained an orange shirt wrapped around two handguns. A forensic examination concluded that the guns found in the nylon bag were a nine millimeter pistol and a .38 caliber revolver, and that they had been used in the shooting of the victim. A state forensic science examiner testified that DNA testing of the handguns revealed that the defendant could not be eliminated as a minor contributor to the DNA sample from the .38 caliber revolver, but could be eliminated as a contributor to the DNA sample from the nine millimeter pistol.

The defendant subsequently was arrested for murder, conspiracy to commit murder and carrying a pistol without a permit. The case proceeded to trial, and during its case-in-chief the state called Michael Hunter, who had been a detective with the New Haven Police Department at the time of the events in the present case. Hunter testified about the execution of the search warrant for Nunez' home and the subsequent police investigation. On cross-examination, when the defendant began questioning Hunter about certain statements that were contained in the search warrant affidavit, the state objected on the ground of hearsay. The court asked the defendant for the purpose for which the statements were being offered. The defendant gave several different bases, including (1) to show why the police went to Nunez' home to search for weapons, (2) to satisfy the jury's right to know what information was contained in the search warrant application such that a Superior Court judge would sign the search warrant, (3) to demonstrate the officer's understanding of why he was at Nunez' home, and (4) to satisfy the jury's right to know that two witnesses had implicated two other suspects, Nunez and Jose Montero. The court then sustained the state's objection, concluding that the defendant was attempting to have the statements admitted for the truth of the matters asserted therein, and, therefore, that the statements constituted inadmissible hearsay. After the court sustained the objection, the defendant did not ask Hunter any further questions. The state rested and the defendant did not present any evidence. The jury found the defendant guilty of murder, conspiracy to commit murder, and carrying a pistol without a permit. This appeal followed.

On appeal, the defendant claims that he functionally preserved his claim that the statements contained in the search warrant affidavit should have been admitted

as adoptive admissions of a party opponent when he claimed at trial that the statements were not inadmissible hearsay. In the alternative, the defendant argues that if this court concludes that the claim is unpreserved, we nevertheless should review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We reject both of the defendant's arguments, and address each in turn.

I

We first address the defendant's claim that he preserved his claim that the witness statements in the search warrant affidavit were adoptive admissions by a party opponent. After reviewing our functional preservation jurisprudence, we conclude that the defendant did not preserve his claim as he neither claimed the adoptive admission by a party opponent exception nor functionally raised the exception to the trial court.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013). "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 286 Conn. 477, 498, 944 A.2d 340 (2008).

Nevertheless, this court has expressed a willingness to review claims that a party did not explicitly raise to the trial court if it is clear from the record that the substance of the claim was raised. In *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 729 n.12, 917 A.2d 540 (2007), we addressed the plaintiffs' claim regarding equitable recoupment, even though they had not specifically raised the issue before the trial court or in the tax appeal proceedings, after determining that they had consistently requested equitable relief and had made continued references to an opinion of this court that involved the concept of recoupment. In *Salmon* v. *Dept. of Public Health & Addiction Services*, 259 Conn. 288, 305, 788 A.2d 1199 (2002), we reviewed the plaintiff's statutory interpretation claim involving the term "resident abuse," despite the fact that she had not explicitly framed the issue that way in the administrative and trial court proceedings, because "the basis of her claim at both the [administrative] and trial court levels was that, in order to constitute resident abuse, there had to be some intentional or wilful conduct by the plaintiff-caregiver toward the victim that resulted in harm." In *State* v. *Munoz*, 233 Conn. 106, 119 n.7, 659 A.2d 683 (1995), this court considered the defendant's challenge to a jury instruction on proximate cause even though the grounds for reversal raised in his brief were

different from those raised during oral argument. The court in *Munoz* concluded that the defendant's objection to the jury instruction at the trial court had referenced both grounds, that the two concepts underlying the grounds were closely related and that the state had an opportunity to address the ground that the defendant had raised at oral argument. Id.

These cases demonstrate that although a party need not use the term of art applicable to the claim, or cite to a particular statutory provision or rule of practice to functionally preserve a claim, he or she must have argued the underlying principles or rules at the trial court level in order to obtain appellate review. Thus, in response to a hearsay objection, although a party need not explicitly identify the hearsay exception that would apply, he or she must at least reference the substance of the applicable exception in order to preserve the claim. It would be unfair to the trial court and to the opposing party to conclude that a party's general denial that a statement constitutes inadmissible hearsay is sufficient to place a trial court on notice of any and all hearsay exceptions that could be, but were not, raised by a party in response to a hearsay objection.

In the present case, the defendant gave several reasons, as previously noted, as to why the trial court should have allowed Hunter to testify about the witness statements in the search warrant affidavit. None of the proffered reasons, however, included any reference, direct or indirect, to any exception to the hearsay rule. Not once did the defendant claim, as he does before this court, that the police were a party opponent or refer to any concept related to the police officers' acceptance or approval of the statements. Although the defendant did assert that the jury had a right to know what information was contained in the search warrant affidavit, he never explained why the jury had a right to know such information or how the jury's right to know implicated the hearsay rule. Neither the trial court nor the state was apprised of any hearsay exception that might apply to the proffered statements, even though the trial court gave the defendant an opportunity to do so.[3] Accordingly, the defendant's claim is not preserved.

## II

Having concluded that the defendant has failed to preserve his claim, we must determine whether we nevertheless can review his claim, pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, that the trial court's preclusion of the witness' statements from the search warrant affidavit violated his constitutional right to present a third party culpability defense. Our review of the record reveals that the defendant has failed to satisfy the second prong of *Golding*, that his claim is of a constitutional magnitude alleging a violation of a fundamental right. Id., 239.

"Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Crespo*, 303 Conn. 589, 606, 35 A.3d 243 (2012).

Moreover, "[t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . .

"A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Saunders*, 267 Conn. 363, 382–83, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004). A defendant may not successfully prevail on a claim of a violation of his right to present a defense if he has failed to take steps to exercise the right or if he adequately has been permitted to present the defense by different means. See *State* v. *Tomas D.*, 296 Conn. 476, 498, 995 A.2d 583 (2010) ("a defendant may not successfully establish a violation of his [right] to present a defense . . . without first taking reasonable steps to exercise [that right]"), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 564, 34 A.3d 370 (2012); *State* v. *Shabazz*, 246 Conn. 746, 758 n.7, 719 A.2d 440 (1998) (no deprivation of constitutional right to present defense when "defendant was adequately permitted to present his claim of self-defense by way of his own testimony, by cross-examining the state's witnesses, and by the opportunity to present any other relevant and admissible evidence bearing on that question"), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

In the present case, although the defendant contends that the trial court's restriction on his ability to cross-examine Hunter regarding the witness statements from the search warrant affidavit had the effect of precluding him from raising a third party culpability defense, he has pointed to no evidence that this is the case. Instead of attempting to establish a third party culpability defense by cross-examining Hunter about the witnesses' hearsay statements, the defendant could have pursued other avenues. Following the court's ruling, the defendant did not question Hunter regarding his personal knowledge of the investigation of the other two suspects, did not attempt to introduce any evidence regarding the police investigation of the other suspects, and failed to produce any evidence that the witnesses who had made the statements were unavailable. In fact, the state represented that it had disclosed the name of one of the witnesses to the defendant. Moreover, the defendant has not demonstrated that the trial court limited his ability to call witnesses, precluded cross-examination of state witnesses who had personal knowledge of the investigation of the purported other suspects or excluded the admission of any other relevant or admissible evidence bearing on the police investigation of the other suspects. It merely determined that the witness statements from the search warrant affidavit were inadmissible hearsay on the basis of the arguments that were presented to the court. Because the defendant has failed to prove that the court's evidentiary ruling deprived him of his right to present a defense, we conclude that the defendant's unpreserved claim is not of a constitutional magnitude, thus failing the second prong of *Golding*. Accordingly, we decline to review the claim.[4]

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The defendant brought his appeal to this court pursuant to General Statutes § 51-199 (b) (3).

[2] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (1) Statement by a party opponent. A statement that is being offered against a party and is . . . (B) a statement that the party has adopted or approved . . . ."

[3] The defendant's additional claim that no rule requires him to state a hearsay exception in response to an objection is unavailing. Although he claims that Practice Book § 5-5 does not apply to those seeking the admission of evidence, this assertion is incorrect. Section 5-5, which details the procedural process following an objection, plainly indicates that after an objection to evidence is made, "counsel shall state the grounds upon which [the admission of evidence] is claimed . . . succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had. . . ." Thus, § 5-5 does apply to the defendant and did require him to state the ground upon which he sought the admission of the statements from the search warrant affidavit.

[4] Because we decline to review the defendant's unpreserved evidentiary claim, we do not address the substance of his argument, namely, that the state, with the police acting as its agent, is a party opponent, and that the witness statements obtained by the police and used to support an application for a search warrant are adopted or approved admissions.