******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ERICK L.*
(AC 36948)

Gruendel, Alvord and Prescott, Js.**

*Argued February 3—officially released September 20, 2016*

(Appeal from Superior Court, judicial district of Waterbury, Cremins, J. [motions to admit evidence]; Agati, J. [judgment].)

*Adele V. Patterson*, senior assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Elena Palermo*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Erick L., appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant raises two claims: (1) the trial court violated his rights under the sixth amendment to confront the witnesses against him and to present a defense by holding that the rape shield statute, General Statutes § 54-86f, prohibited him from introducing evidence of the sexual nature of the victim's prior relationship with her boyfriend; and (2) the court violated the defendant's right to trial by an impartial jury under the sixth amendment when it seated a juror who believed that children were less likely to lie than adults. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts after the conclusion of the evidence. The victim was born in 1997; the defendant was born in 1984. In 2004, the victim's mother met and began dating the defendant. He eventually moved in with the victim's mother, and they lived together at various addresses between then and 2010. Initially, the victim got along well with the defendant, but, beginning in 2007, he began touching the victim inappropriately. One day, in the kitchen of the apartment where they were then living, he grabbed the victim's buttocks. The victim told her mother about the incident, and her mother asked the defendant if this was true. The defendant denied it, and the victim's mother did not pursue the matter further. The defendant confronted the victim once she was alone in her room and angrily demanded to know why she was lying to her mother. Although the victim knew that what the defendant had done was wrong, she felt as if her mother did not believe her, and so she later told her mother that maybe she had "take[n] it the wrong way."

The family moved to a new apartment at the end of 2008. A few months after the move, the defendant resumed touching the victim inappropriately. The abuse escalated, with the defendant touching the victim's buttocks, breasts, and vagina. He forced the victim to touch his penis, on one occasion ejaculating on her hand. He told the victim that one day he was going to rape her. At the time, the victim was eleven years old.

The victim began cutting her legs with her fingernails and taking pills to cope with the abuse. She grew sullen and would lash out at people. Although the victim had a good relationship with her mother, she did not discuss the abuse with her mother because her mother had not believed her the first time, and she did not think her mother would believe her the second time. Eventually,

in November, 2009, the victim—then twelve years old—told her boyfriend that the defendant was touching her. Her boyfriend told his mother, who did not do anything. Her boyfriend also stopped asking the defendant for rides home when he visited the victim, so that the victim would not have to be alone with the defendant on the ride back.

Finally, in January, 2010, the victim told her grandmother about the defendant touching her. She had called her grandmother because she was angry at the defendant for taking a space heater out of her room during the winter while the apartment's heating system was broken. She testified that at the time she was frustrated and angry, and had been holding those emotions inside for almost one year. During the phone call to her grandmother, "[i]t just all came out," and she told her grandmother about how the defendant had been touching her. The grandmother drove over and picked the victim up the next day, and the victim's cousin had her write down in a notebook what the defendant had done to her. The grandmother then called the victim's mother over to talk about it with several other family members and friends there for support. They called the police. The defendant moved out that day. He was later arrested and charged with one count of attempt to commit sexual assault in the first degree, as well as multiple counts of sexual assault in the fourth degree and risk of injury to a child.

A jury found the defendant guilty of two counts of sexual assault in the fourth degree and two counts of risk of injury to a child. The jury found him not guilty of one count of attempted sexual assault in the first degree, one count of sexual assault in the fourth degree, and one count of risk of injury to a child. The court imposed a sentence of fifteen years incarceration, suspended after ten years of mandatory minimum time,[2] with ten years of probation. This appeal followed.

I

The defendant's first claim is that the court violated his rights under the sixth amendment to confront the witnesses against him and to present a defense when, pursuant to the rape shield statute, § 54-86f, it excluded evidence of the sexual nature of the victim's prior relationship with her boyfriend. We disagree.

A

Before trial, the state moved to exclude any evidence of the victim's prior sexual conduct, pursuant to § 54-86f.[3] The defendant, however, moved to admit evidence that the victim was having sex with her boyfriend before she brought sexual abuse allegations against the defendant, on the ground that such evidence was admissible under the fourth exception to § 54-86f because it was "otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's

constitutional rights. . . .'' General Statutes § 54-86f (4).

When the court decided these two motions in limine at a pretrial hearing, the court had before it only the factual representations and arguments made by the parties at that hearing. As for the defendant, defense counsel represented the following to the court at that hearing. Shortly before the victim's sexual abuse allegations, the defendant had found a series of letters that the victim's boyfriend had written to her. In the letters, the victim's boyfriend talked about losing his virginity with the victim, her concern that she might be pregnant, and their desire to be together forever. When the defendant found the letters, he confronted the victim and spoke with her mother. As a result, the victim was grounded and forbidden from seeing her boyfriend again, which ultimately led to their separation. Defense counsel further represented that the victim's relationship with the defendant deteriorated after her grounding, with the two arguing often, until one month later when she called her grandmother and falsely accused the defendant of sexual abuse so that the Department of Children and Families would remove him from the home. Defense counsel submitted the letters at issue to the court after the hearing.

The defense argued that evidence of the sexual nature of the victim's relationship with her boyfriend was material on two distinct grounds: (1) to rebut an inference that the victim's allegations must be true because a child her age otherwise would lack the sexual knowledge necessary to make up the allegations; and (2) to show that the victim had a strong motive to falsely accuse the defendant as retaliation against him for ending her sexual relationship with her boyfriend.

As to the sexual knowledge ground, the defense argued that, if the state submitted evidence conforming to its allegations that the victim accused the defendant of making her "hold his penis and go up and down on his penis," until the point of "ejaculation," and of asking her, "are you going to suck my penis," then the jury would naturally question where the victim learned how sex works such that she would be able to make allegations accurately describing sexual mechanics. The defense argued that, because the victim was only twelve years old when she first reported the defendant's sexual abuse, a jury would naturally presume that she had no ordinary sources of sexual knowledge, and so the only way she would know enough to describe sex was if she had learned about it from the defendant's sexual abuse. The defense argued that evidence of an alternative source of sexual knowledge—i.e., the victim's sexual relationship with her boyfriend—was necessary to rebut that presumption.

As to the motive ground, the defense argued that, in presenting the jury with the defense theory that the

victim accused the defendant of sexually abusing her in retaliation for his grounding her and ending her relationship with her boyfriend, the sexual nature of that relationship was relevant to the "emotional state of the parties" and explained why the victim became "so angry her emotions rose to the point" of falsely accusing the defendant of sexual abuse.

The state opposed the defendant's motion, arguing that (1) a jury would not presume that someone the victim's age was sexually nave, especially given that "[c]hildren at an early age are taught . . . what's a good touch and what's a bad touch," so there was no need to rebut such a presumption with evidence of an alternative source of sexual knowledge, and (2) the defendant could submit evidence that he punished the victim and ended her relationship with her boyfriend shortly before she made the allegations against him, suggesting a possible motive, but whether the victim was having sex with her boyfriend was immaterial. The state did not dispute that the letters showed that the victim and her boyfriend were sexually active.

The court granted the state's motion to exclude the evidence and denied the defendant's motions to admit it. The court ruled that the defendant could "say there was an issue, it was a very substantial issue, you know, that I'm going to allow, but not the specifics of what it was. You can't go there." When the defendant asked for further clarity the next day, the court replied: "Let me see if I can make this absolutely clear. There is to be no questioning, no inquiry based on my ruling yesterday with respect to any relationship—specific relationship between [the boyfriend] and the [victim]. I want that to be absolutely clearly understood, and— is that clear?. Is there any—any question about that area? Because if there is, I'd like to hear it now. . . .

"You can't go into any area where an inference of a sexual relationship between [the boyfriend] and the [victim] could be inferred by the jury. I'm cautioning you, don't go there. . . . If you want to say there were letters . . . and the content of those letters caused an argument, that's fine, but nothing about what the content is. . . . I don't know how much clearer I can make this."

B

We begin with the standard of review. "This court has consistently recognized that it will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . *State* v. *Santos*, 318 Conn. 412, 423, 121 A.3d 697 (2015). Generally, a trial

court abuses its discretion when the court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . *State* v. *O'Brien-Veader*, 318 Conn. 514, 555, 122 A.3d 555 (2015). When this court reviews a decision of the trial court for abuse of discretion, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable. . . . *State* v. *Cancel*, 275 Conn. 1, 18, 878 A.2d 1103 (2005). Accordingly, the abuse of discretion standard reflects the context specific nature of evidentiary rulings, which are made in the heat of battle by the trial judge, who is in a unique position to [observe] the context in which particular evidentiary issues arise and who is therefore in the best position to weigh the potential benefits and harms accompanying the admission of particular evidence. . . . *State* v. *Collins*, 299 Conn. 567, 593 n.24, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011)." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, 320 Conn. 781, 831–32, 135 A.3d 1 (2016) (*Espinosa, J.*, concurring); see also id., 823 (reviewing for abuse of discretion defendant's sixth amendment claims that he was denied right to confrontation and right to present defense); *State* v. *Cecil J.*, 291 Conn. 813, 819 n.7, 970 A.2d 710 (2009) ("[w]e review the trial court's decision to [exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion" [internal quotation marks omitted]).

"Prosecutions for sexual assault are governed by special rules of evidence, including § 54-86f. That statute was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material. . . . In enacting § 54-86f, the legislature intended to [protect] the victim's sexual privacy and [shield the victim] from undue harassment, [encourage] reports of sexual assault, and [enable] the victim to testify in court with less fear of embarrassment. . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. . . .

"Thus, to determine whether the [sexual conduct] evidence [at issue] was properly excluded, we must begin our analysis with the relevant language of the rape shield statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Wright*, supra, 320 Conn. 798. The rape shield statute generally bars evidence of a victim's prior sexual conduct, subject to four exceptions, only the fourth of which is at issue here. Section 54-86f provides in relevant part: "In any prosecution for sexual assault . . . no evidence of the sexual conduct of the victim may be admissible unless such evi-

dence is . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights . . . [and] the probative value of the evidence outweighs its prejudicial effect on the victim . . . ."

Our Supreme Court has interpreted this language to require that a defendant show that the proffered evidence is (1) material, (2) relevant, and (3) *so* relevant and *so* material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. See *State* v. *Wright*, supra, 320 Conn. 812–23.[4] Here, the proffered evidence was a series of letters, and presumably related cross-examination, that would have revealed the sexual nature of the victim's relationship with her boyfriend. We address each of the three requirements in turn.

1

First, we conclude that the proffered evidence was material, but only on the theory that it spoke to the victim's motive, not on the theory that it rebutted a presumption of sexual naivete. "[E]vidence is material when it has an influence, effect, or bearing on a fact in dispute at trial." Id., 810. Materiality is often contrasted with relevance. The classic distinction between materiality and relevance is that (1) materiality pertains to whether the evidence tends to prove a *fact* that *bears on an element of or defense to* the action, and (2) relevance pertains to whether the *evidence* actually *tends to prove* that fact. See Conn. Code Evid. § 4-1, commentary; C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) §§ 4.1 through 4.1.4, pp. 153–55. In a strict sense, then, evidence is relevant to facts, and facts are material to legal elements. See Conn. Code Evid. § 4-1, commentary. In a more general sense, evidence is "material" if it is offered to prove facts that are themselves material, either directly or indirectly, to a legal element. See *State* v. *Wright*, supra, 320 Conn. 810; C. Tait & E. Prescott, supra, § 4.1.3, p. 154.

Here, the defendant offered two theories as to why the evidence was material. First, he argued that the sexual nature of the victim's relationship with her boyfriend would rebut an inference that the defendant must have sexually abused the victim because a child her age otherwise would lack the sexual knowledge necessary to make such allegations, and, thus, was material to whether the defendant sexually abused the victim. Second, he argued that the sexual nature of the victim's relationship with her boyfriend gave her a stronger motive to falsely accuse the defendant as payback for his role in ending it, which was material to whether her allegations of sexual abuse were true. We address each theory in turn.

As to the sexual knowledge theory of materiality, the defendant argues that the sexual nature of the victim's

relationship with her boyfriend was material to whether the defendant sexually abused the victim, insofar as it rebutted an inference that he must have sexually abused her because otherwise a child of the victim's age presumably would lack the sexual knowledge necessary to fabricate such allegations. This theory of materiality is essentially defensive and responds to the presumption that a child of the victim's age would have no source of sexual knowledge other than the abuse alleged. The seminal case on this issue is *State* v. *Rolon*, 257 Conn. 156, 158–59, 167 n.19, 777 A.2d 604 (2001), in which a trial court excluded evidence that a different relative had sexually abused a six year old victim before the victim disclosed that the defendant abused her, and our Supreme Court held that this violated the defendant's constitutional rights. According to the court, the six year old victim in *Rolon* exhibited sexualized "behavior indicative of sexual abuse" and "highly age-inappropriate sexual knowledge," which a jury would "inevitably conclude . . . [came] from [the] *defendant* having committed such acts," if the defendant were not given the chance to rebut that presumption with evidence of an alternative source of the victim's sexual knowledge. (Emphasis in original; internal quotation marks omitted.) Id., 185.

Although, in *Rolon*, evidence of the six year old victim's prior sexual abuse may have been necessary to rebut the "jury's natural presumption of [the] child victim's sexual naivete"; id., 184 n.29; we cannot conclude that a similar rebuttal was required here. In the present case, the victim was twelve years old when she first came forward, and she was sixteen years old when she testified before the jury at trial.[5] The sexual knowledge displayed in her allegations against the defendant was not unusual and was consistent with what middle schoolers and high schoolers are commonly taught about sex.[6] We, thus, cannot conclude that the jury naturally would have presumed that the victim had no source of sexual knowledge other than the defendant's abuse, such that evidence rebutting that presumption with an alternative source of sexual knowledge was material. Cf. *State* v. *Talton*, 197 Conn. 280, 285–86, 497 A.2d 35 (1985) (where state never contended that baby born roughly nine months after sexual assault was defendant's child, evidence rebutting defendant's paternity was irrelevant). The court properly rejected the defendant's sexual knowledge theory of admissibility.[7]

As to the motive theory of materiality, the defendant argues that the sexual nature of the victim's relationship with her boyfriend was material to the issue of whether the defendant sexually abused the victim because it established a stronger motive for the victim to falsely accuse the defendant. According to the defendant, the victim's motive was her desire to get back at him for ending her relationship with her boyfriend, so the closeness of that relationship would affect the strength of

her motive, and the strength of her motive would affect the credibility of her allegations.

Because the victim was a fact witness to the acts of sexual abuse alleged, her credibility was material to whether the defendant in fact "subject[ed] [the victim] to sexual contact" or "ha[d] contact with the intimate parts [of the victim] . . . in a sexual and indecent manner likely to impair the health or morals of such child," which were required elements of the crimes charged. See General Statutes §§ 53a-73a (a) (1) (A) and 53-21 (a) (2). Thus, to the extent that the defendant offered evidence of the sexual nature of the victim's relationship with her boyfriend to prove that she had a strong motive to falsely accuse the defendant as retaliation for ending that relationship, the evidence was material for purposes of the rape shield statute.[8]

2

We next conclude that the proffered evidence was relevant. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Wright*, supra, 320 Conn. 812. Similarly, the Code of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. "[E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 29, 807 A.2d 955 (2002).

Here, the proffered evidence—i.e., the letters and the victim's testimony—is relevant if each factual link in the chain connecting that evidence to the legal elements of the crime tends to support the next factual link, even to a slight degree. See id. Here, the defendant argues that (1) the letters and the victim's testimony would establish that she and her boyfriend had *sexual intercourse*; (2) which was relevant to whether the defendant broke off a *particularly close relationship* between the victim and her boyfriend; (3) which was relevant to whether the victim had a *strong motive* to seek revenge

against the defendant; (4) which was relevant to the victim's *credibility*; (5) which was relevant to whether the victim's testimony that *the defendant sexually abused her* was true. We conclude that each factual link does tend to support the next, at least to a slight degree. On the first link, the state does not dispute that the letters showed that the victim and her boyfriend were sexually active. On the second and third links, our Supreme Court previously has held that, for purposes of evidentiary relevance, "a sexual relationship differs substantially from a nonsexual one in the level of emotional intensity and potential animus resulting from its termination." *State* v. *Cortes*, 276 Conn. 241, 256, 885 A.2d 153 (2005). On the fourth and fifth links, the United States Supreme Court has held that the "ulterior motives of [a] witness . . . [are] always relevant as discrediting the witness and affecting the weight of [her] testimony." (Internal quotation marks omitted.) *Davis* v. *Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Accordingly, the proffered evidence is relevant for purposes of the rape shield statute.

3

Although evidence of the sexual nature of the victim's relationship with her boyfriend was both material and relevant to prove the strength of the victim's motive to falsely accuse the defendant, we conclude that it was not *so* material and *so* relevant that its exclusion violated the defendant's constitutional rights.

"It is fundamental that the defendant's rights to confront the witnesses against him and to present a defense are guaranteed by the sixth amendment to the United States constitution. The sixth amendment provides in relevant part: In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . . A defendant's right to present a defense is rooted in the compulsory process and confrontation clauses of the sixth amendment . . . . Furthermore, the sixth amendment rights to confrontation and to compulsory process are made applicable to state prosecutions through the due process clause of the fourteenth amendment. . . .

"In plain terms, the defendant's right to present a defense is the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . It guarantees the right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . . Therefore, exclusion of evidence offered by the defense may result in the denial of the defendant's right to present a defense. . . .

"The right of confrontation is the right of an accused in a criminal prosecution to confront the witnesses

against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest; proof of the main facts is a matter of right, but the extent of the proof of details lies in the court's discretion. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment. . . .

"These sixth amendment rights, although substantial, do not suspend the rules of evidence . . . . A court is not required to admit all evidence presented by a defendant; nor is a court required to allow a defendant to engage in unrestricted cross-examination. . . . Instead, [a] defendant is . . . bound by the rules of evidence in presenting a defense . . . . Nevertheless, exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights . . . . Thus, [i]f the proffered evidence is not relevant [or constitutes inadmissible hearsay], the defendant's right[s] to confrontation [and to present a defense are] not affected, and the evidence was properly excluded. . . . The defendant's right to confront witnesses against him is not absolute, but must bow to other legitimate interests in the criminal trial process. . . . Such interests are implicit in a trial court's accepted right, indeed, duty, to exclude irrelevant evidence . . . .

"There are special considerations in sexual assault prosecutions that trial courts must keep in mind when ruling on the admissibility of evidence, such as shielding an alleged victim from embarrassing or harassing questions regarding his or her prior sexual conduct. . . . Although the state's interests in limiting the admissibility of this type of evidence are substantial, they cannot by themselves outweigh [a] defendant's competing constitutional interests. . . . As we previously have observed, evidentiary rules cannot be applied mecha-

nistically to deprive a defendant of his constitutional
rights. . . .

"We must remember that [t]he determination of
whether the state's interests in excluding evidence must
yield to those interests of the defendant is determined
by the facts and circumstances of the particular case.
. . . In every criminal case, the defendant has an
important interest in being permitted to introduce evi-
dence relevant to his defense. Evidence is not rendered
inadmissible because it is not conclusive. All that is
required is that the evidence tend to support a relevant
fact even to a slight degree, [as] long as it is not prejudi-
cial or merely cumulative. . . . Whenever the rape
shield statute's preclusion of prior sexual conduct is
invoked, a question of relevancy arises. If the evidence
is probative, the statute's protection yields to constitu-
tional rights that assure a full and fair defense. . . . If
the defendant's offer of proof is . . . more probative
to the defense than prejudicial to the victim, it must be
deemed admissible at trial. . . . When the trial court
excludes defense evidence that provides the defendant
with a basis for cross-examination of the state's wit-
nesses, [despite what might be considered a sufficient
offer of proof] such exclusion may give rise to a claim
of denial of the right[s] to confrontation and to present
a defense." (Citations omitted; internal quotation marks
omitted.) *State* v. *Wright*, supra, 320 Conn. 816–20.

"In determining whether a defendant's right of cross-
examination has been unduly restricted, we consider
the nature of the excluded inquiry, whether the field
of inquiry was adequately covered by other questions
that were allowed, and the overall quality of the cross-
examination viewed in relation to the issues actually
litigated at trial." (Internal quotation marks omitted.)
*State* v. *Mark R.*, 300 Conn. 590, 610, 17 A.3d 1 (2011).

At the outset, we note that the defendant relies heav-
ily on *State* v. *Cortes*, supra, 276 Conn. 256, for the
proposition that excluding evidence of the sexual
nature of a victim's relationship with her boyfriend was
error where the closeness of that relationship spoke to
her motive to fabricate the allegations. The court in
*Cortes* held that such evidence was relevant, and so
excluding it was *evidentiary* error.[9] Id., 253. The court
was silent on whether it rose to the level of *constitu-
tional* error. Id. Here, we agree with the defendant that
the sexual conduct evidence was relevant, largely on
the authority of *Cortes*, but that begs the question of
whether it was also so critical that its exclusion violated
the defendant's constitutional rights.

We thus turn to an examination of our sixth amend-
ment jurisprudence. On the one hand, convictions have
been reversed where a defendant was entirely pre-
vented from putting the defense theory of the case
before the jury, either (1) because the defense was
barred from asking about it, or (2) because the defense

was allowed to ask but was barred from introducing any evidence to support it. Two cases from the United States Supreme Court are illustrative.

In *Olden* v. *Kentucky*, 488 U.S. 227, 229–30, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988), the defendant's theory of the case was that the victim's lover caught her exiting the defendant's car after a night at a bar, and that the victim claimed he had kidnapped and raped her to cover up her infidelity. The trial court entirely precluded the defendant from asking about the victim's relationship with her lover, and a jury found the defendant guilty. Id., 230. On appeal, the United States Supreme Court reversed the judgment of conviction, holding that the trial court had violated the defendant's sixth amendment rights by excluding all evidence that the victim and her lover were in a relationship, effectively removing the defendant's theory of the case from the jury's consideration.[10] Id., 233.

In *Davis* v. *Alaska*, supra, 415 U.S. 310–11, the defendant was charged with stealing a safe from a bar, and the only witness who identified the defendant was the teenage boy in whose yard the safe was found. At the time, the teenage boy was on probation for a prior burglary. The defense theory of the case was that the boy falsely accused the defendant either to deflect suspicion away from himself, or to appease the police, given his precarious status as a probationer. At trial, the defendant was allowed to ask the boy if he was afraid the police might suspect him of stealing the safe, but was forbidden from introducing evidence that the boy was on probation after being adjudicated a juvenile delinquent for the prior burglary. Id., 311–13. "On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness," and, indeed, the jury found the defendant guilty. Id., 318. On appeal, the United States Supreme Court reversed the judgment of conviction, holding that the trial court violated the defendant's sixth amendment rights by excluding all evidentiary support for the defendant's theory of the case.[11] Id.

On the other hand, convictions have been affirmed where the defense theory of the case either (1) was sufficiently before the jury, or (2) was so far-fetched that excluding it did not infringe the defendant's constitutional rights. Two cases from our Supreme Court are illustrative.

In *State* v. *Crespo*, 303 Conn. 589, 591, 600 n.13, 35 A.3d 243 (2012), the defendant was charged with violently raping his girlfriend, who testified that she had wished to remain a virgin until marriage. The defendant's theory of the case was that the victim had consented; he thus sought to undermine the victim's credibility by showing that she was deceptive, and had

a motive to lie in that she was having sex with and became engaged to another man while she was dating the defendant. Id., 596, 601. At trial, the court permitted the defense to ask the victim about her financial support from and engagement to the other man, but forbade the defense from asking if they had a sexual relationship. Id., 601. On appeal, our Supreme Court affirmed the judgment of conviction, holding that evidence of the sexual nature of the victim's relationship with the other man may well have been relevant to undermine the victim's credibility and to rebut her claim of virginity, but that it was not so relevant that its exclusion violated the defendant's constitutional rights.[12] Id., 611–12.

In *State* v. *Kulmac*, 230 Conn. 43, 49–50, 644 A.2d 887 (1994), the defendant, who was an uncle figure to the two child victims, was charged with repeatedly sexually abusing them over the course of several years. The defense theory of the case was that the victims either (1) confused the defendant with various other men who had sexually abused them, or (2) falsely implicated the defendant to protect their actual assailants from prosecution. Id., 51, 55–56. The trial court excluded evidence of the victims' prior sexual abuse by the other men and the defendant was convicted. Id., 45, 51–52. On appeal, our Supreme Court affirmed the judgment of conviction, deferring to the trial court's finding that the two victims did not appear confused as to the identity of their assailant and holding that the record did not bear out the defendant's motive argument because the two victims had already reported their other assailants to the police, resulting in their conviction. Id., 55–56.

Here, although the defendant's motive argument was not so beyond the pale that its wholesale exclusion would have been appropriate, the defendant was not prevented entirely from developing his theory of the case before the jury—to wit, that the victim falsely accused him in retaliation for his taking away her privileges, including her friendship with the boy she was dating. The court's ruling allowed the defendant to present evidence of every aspect of that punishment and its effect, including what privileges the victim lost, how much time she spent with her boyfriend before she was grounded, her reaction to being grounded, her reaction to being told she could no longer see her boyfriend, and her reaction to their breakup.[13] He was precluded from introducing further evidence only to the extent that it revealed that the victim and her boyfriend were sexually active. On this record, we cannot conclude that the exclusion of the sexual conduct evidence violated the defendant's sixth amendment rights. See *State* v. *Mark R.*, supra, 300 Conn. 611 ("[c]onsistent with these principles, we have rejected confrontation challenges in child abuse cases where the trial court permitted at least some inquiry into the witness' possible

motives for untruthfulness"). The court did not abuse its discretion by excluding such evidence under § 54-86f (4).

## II

The defendant's second claim is that the court violated his right to trial by an impartial jury under the sixth amendment to the United States constitution[14] when it seated juror D.W., who ultimately became the jury foreperson.[15] The defendant argues that D.W. could not be fair and impartial for three reasons: (1) D.W. believed that children were less likely to lie than adults; (2) he had personal experience believing a child abuse victim; and (3) he publicly opined on the central issue of the case during voir dire. By contrast, the state argues that the court did not abuse its discretion in seating D.W. because D.W. said that he would follow the court's instructions and that he would put his past experience aside when considering the evidence against the defendant.

The following additional facts and procedural history are relevant to this claim. After six regular jurors and three alternates had been selected, but before trial began, the court informed the parties that they had lost two jurors. One of the alternate jurors was excused with a doctor's note due to back issues, and one of the regular jurors was unable to attend because his child had caught pneumonia. Accordingly, the court decided to select one additional alternate before trial began and then to select, from the three alternates, the replacement sixth regular juror.

Because the state and the defendant already had exercised all eight of their peremptory challenges, the court gave them each one extra peremptory challenge for this final round of jury selection. The defendant exercised his peremptory challenge on the first prospective juror interviewed. The second prospective juror interviewed was D.W. During voir dire, D.W. said that he was a welder from Naugatuck who lived with his fiancée and their two year old daughter. He had the following exchange with the prosecutor:

"Q. There may be some testimony from a child or a teenager in this case. Do you have any feelings about the credibility of children or teen—teenagers?

"A. Versus the age of who's testifying?

"Q. Yeah.

"A. No.

"Q. Okay. Do you think teen—do you think children generally tell the—excuse me. Do you think children generally tell the truth?

"A. Most of the time, yes.

"Q. Okay. How about teenagers?

"A. Here and there, yes.

"Q. Here and there, yes?

"A. Well, it depends because some kids don't tell the truth, some kids do.

"Q. Do you think teenagers tend to not tell the truth?

"A. A little more than the others, yeah, because they're older and they know things right from wrong versus a child.

"Q. Okay. So, if a teenager were to testify in this case and an adult were to—just hypothetically—and an adult were to testify in this case, do you think you would tend to believe the adult over the teenager?

"A. No.

"Q. Say hypothetical, teenager says X, adult says Y, totally different. Who would you tend to believe?

"A. The teenager.

"Q. Why?

"A. Because teenagers are younger and they don't know everything. They—they don't know certain things as opposed to an adult.

"Q. Okay.

"A. They're more to tell the truth sometimes than an adult does.

"Q. If the court were to instruct you that in assessing the credibility of any witness—child, teenager, adult—you—age can't play a factor in the sense of, if—that age isn't a determining factor in assessing credibility, would you follow that—

"A. No.

"Q. —instruction?

"A. What do you mean?

"Q. In—for example, if the court were to say, just be—age shouldn't be a factor in your assessment of the testimony of a person, whether it be a child or an adult, would you follow that instruction?

"A. Yes.

"Q. Okay. And the reason I'm—I'm asking is, there may be testimony from adults, there may be testimony from teenagers, there may be testimony from younger children. So, how would you assess a witness' credibility? If a witness testified, how would you—how would you figure out if that person was telling the truth?

"A. Their body language.

"Q. Anything else?

"A. No.

"Q. Okay. So, if the court said age can't play a factor,

you'll take that out of the equation?

"A. Yes."

Later, defense counsel and D.W. had the following exchange:

"Q. Some people feel that no child would ever make these accusations unless they were true. How do you feel about that? Do you agree with that?

"A. I agree with that.

"Q. Okay. Tell us a little bit about that.

"A. Well, 2005, a neighbor on my—in my neighborhood, my girlfriend at the time, her children—her daughter played with one of the neighbor's kids.

"Q. Um hmm.

"A. And her daughter came to me and said that this person was doing things that were out of the ordinary, and I brought it to the mother's attention and then it was waved away by the police department and not caring because there was no proof, but then a month later there was a problem with another person, and now that person's not there anymore because they did something wrong. But when I spoke about it, and I believe the child because most of the time children don't make things up.

"Q. Okay. So, at this time, right there, [the defendant], His Honor indicated that at this time he is presumed innocent. Do you think that given your past experience you would have difficulty—

"A. No, because everybody gets a fair chance.

"Q. And so at this time you have no problem presuming—

"A. No.

"Q. —him innocent?

"A. No.

"Q. However, you do feel that children would never lie about an—

"A. I didn't say children would never lie.

"Q. Oh, I'm sorry. I apologize. Could you—

"A. I didn't say they wouldn't lie. I just said that they usually tell the truth because they—some don't—some don't know right from wrong.

"Q. Do you think it makes a difference whether it's a younger child or a teenager, close to being a teenager? Does it make a difference?

"A. Somewhat of a difference, but not really because they're children still and they haven't reached to the mature level to understand right from wrong.

"Q. What would you consider a teenager?

"A. I would consider a teenager fifteen and up.

"Q. And so anybody below that age?

"A. Is still a child.

"Q. Is still a child. And you think that for the most part they would never accuse anybody unless it was true?

"A. Unless it was true.

"Q. Do you think that it would be difficult in this case not to lean for the prosecution?

"A. No. It would be equal because you have to hear both sides to understand what's going on.

"Q. And it wouldn't be difficult for you to put aside your belief that children most likely will not—

"A. Children lie, but also children don't lie, so you have to put to the side that there's a right and a wrong, and that child's going to either tell the truth or it's going to lie and then, once again, it's a person's body language.

"Q. Yeah. So, if you were chosen as a juror and you had a person—you had a child on the one hand, somebody under fifteen, and somebody who is an adult and they have contradictory stories, would you tend to believe the child over the adult?

"A. Maybe, maybe not. It depends. I don't know. I'm not put in that position—that predicament yet so I don't know.

"Q. So, you would—you would want to listen to what they have to say?

"A. I would want to understand what's going on before I make that decision, yeah."

Finally, the court asked D.W. several questions on the same topic:

"[Q.] Okay. Probably the most important rule is that the jury evaluates all the witnesses, and it's required without exception to treat all those witnesses equally. It doesn't matter their gender, it doesn't matter their age, it doesn't matter what their title is, it doesn't matter if they're police officers, it doesn't matter if they're— it doesn't matter. You've got to treat every single witness by the same standard. So, the question is: Can you follow that rule?

"[A.] Yes, sir.

"[Q.] Okay. Now, we talked about—answered that. Just let me check my notes here. Give me a second. So, again, let me just give you an analogy, just—just to—I don't want to belabor this, but it's a real important point. The process here, you have to think of as a blank canvas. You're an artist, so the canvas is blank. The— the attorneys paint the picture—

"[A.] Um hmm.

"[Q.] —with the witnesses, with the exhibits, so that's the only thing you can consider. Anything from outside is not relevant.

"[A.] It doesn't exist.

"[Q.] It's just—right. It doesn't exist. That's a good way to put it. It's just what's presented to you here by treating all the witnesses by the same standard. So, can you—can you do that?

"[A.] Yes, sir."

When the juror left the room, the state said that it found D.W. acceptable. Defense counsel challenged him for cause, arguing that D.W. had said that he had personal experience believing a child abuse victim and that he thought children more credible. The court denied the challenge for cause, noting that D.W. ultimately said that he would have to evaluate children's credibility on an individual basis.[16] The court seated D.W. as an alternate, the clerk randomly chose D.W. from the three alternates to be a regular juror, and D.W. was elected to be the jury foreperson at the end of trial.

We begin with the standard of review. "The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. . . . We agree with the defendant that the enactment of article first, § 19, of the Connecticut constitution, as amended, reflects the abiding belief of our citizenry that an impartial and fairly chosen jury is the cornerstone of our criminal justice system. . . . We have held that if a potential juror has such a fixed and settled opinion in a case that he cannot judge impartially the guilt of the defendant, he should not be selected to sit on the panel. . . .

"The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion. . . . On appeal, the defendant bears the burden of showing that the rulings of the trial court resulted in a jury that could not judge his guilt impartially." (Citations omitted; internal quotation marks omitted.) *State* v. *Tucker*, 226 Conn. 618, 630–31, 629 A.2d 1067 (1993). Accordingly, we review the defendant's claim for an abuse of discretion. Id., 630.

On this record, we cannot conclude that the court abused its discretion in denying the defendant's challenge for cause to juror D.W. The defendant argues that D.W. could not be fair and impartial for three reasons: (1) D.W. believed that children were less likely to lie than adults; (2) he had personal experience believing a child abuse victim; and (3) he publicly opined on the central issue of the case during voir dire.

As to the first reason, which is D.W.'s tendency to believe children, although D.W. did say that children generally tell the truth, he also noted that "some kids

don't tell the truth, some kids do," and that if a teenager and an adult both testified in a case, he would *not* necessarily believe the teenager over the adult. Rather, D.W. said that he would evaluate the witnesses' credibility individually, on the basis of their demeanor. He reiterated that position when defense counsel questioned him on it. When the court instructed D.W. that "it doesn't matter their age . . . [y]ou've got to treat every single witness by the same standard," and asked D.W. if he would follow that rule, he replied that he would.[17]

As to the second reason, which is D.W.'s prior experience, although D.W. did say that, eight years ago, his former girlfriend's daughter told him that a neighbor was "doing things that were out of the ordinary" and that the neighbor was "not there anymore because they did something wrong." D.W. was also adamant that "everybody gets a fair chance" and that he would "have to hear both sides to understand what's going on" in the defendant's case. When the court explained that D.W. could consider only the testimony and exhibits at trial, not any outside experiences, D.W. said that he understood and would treat his prior experience as though "[i]t doesn't exist." When the court asked D.W. if he could limit his deliberations to the evidence presented at trial, D.W. replied that he would.

As to the third reason, for the reasons previously discussed, we disagree that D.W. expressed "a fixed and settled opinion"; *State* v. *Tucker*, supra, 226 Conn. 630; on the central issue of the case, i.e., the victim's credibility versus that of the defendant. To the contrary, D.W. repeatedly said that he would have to hear the evidence and evaluate witnesses on an individual basis.

In sum, after some initial confusion, D.W. told both attorneys and the court that he would not believe child witnesses merely on the basis of their age; that he would put aside his prior experiences; and that he would need to judge each witness individually. We conclude that the court reasonably could have determined that D.W. would be impartial, and so the court did not abuse its discretion when it denied the defendant's challenge for cause.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The jury found the defendant not guilty of three other charges: (1) a third charge of sexual assault in the fourth degree; (2) a third charge of risk of injury to a child; and (3) a charge of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2).

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts . . . of a child under the age

of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . and [if] the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court.''

We note that although § 53-21 has been amended several times since the events at issue here, those amendments are not relevant to this appeal. For convenience, we refer to the current revision of § 53-21 as codified in the 2016 supplement to the General Statutes.

Here, the court imposed consecutive five year mandatory minimum sentences on the conviction of two counts of risk of injury to a child. See *State* v. *Polanco*, 301 Conn. 716, 723, 22 A.3d 1238 (2011) (''[t]he determination whether to impose concurrent or consecutive sentences is a matter within the sound discretion of the trial court'' [internal quotation marks omitted]).

[3] General Statutes § 54-86f provides in relevant part: ''In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence [meets one of four exceptions] . . . .''

[4] Our Supreme Court has held that the requirement that the probative value of the evidence must outweigh its prejudice to the victim is superfluous when a defendant proceeds under subdivision (4) because a victim's rights under a state statute can never outweigh a defendant's rights under the federal constitution. See *State* v. *Wright*, supra, 320 Conn. 823 n.20 (''evidence cannot be excluded as more prejudicial to the victim than probative when that exclusion has already been determined to violate the defendant's constitutional rights'' [internal quotation marks omitted]); see also U.S. Const., art. VI, cl. 2 (''[t]his Constitution . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding'').

[5] See *State* v. *Oliver*, 158 Ariz. 22, 31, 760 P.2d 1071 (1988) (''[g]iven the age of the [twelve and thirteen year old] victims and the rather unexplicit nature of their testimony, we find it unlikely that a jury would infer that the victims could only describe the molestation because [the defendant] had, in fact, molested them''); but see *People* v. *Ruiz*, 71 App. Div. 2d 569, 570, 418 N.Y.S.2d 402 (1979) (seemingly accepting argument that evidence of twelve year old victim's prior sexual conduct was admissible to show alternative source of sexual knowledge).

[6] We note that the evidence presented at trial, although obviously not available to the court when it ruled on the motions in limine, bore out the court's conclusion that evidence of the victim's sexual relationship with her boyfriend as an alternative source of the victim's sexual knowledge was immaterial. At trial, the state never argued that the victim displayed a degree of sexual knowledge that was unusual for her age, or that the defendant was its only possible source. Indeed, the state's expert witness testified, albeit for a different purpose, that children begin to acquire sexual knowledge naturally from a young age, and are taught about sex in school beginning around fourth or fifth grade. Here, the victim first accused the defendant of sexually abusing her when she was twelve years old in seventh grade, and she was sixteen years old at trial.

[7] Evidence must meet all three of the rape shield statute's requirements to be admissible. *State* v. *Wright*, supra, 320 Conn. 815. Thus, our conclusion that the victim's sexual knowledge was not material dispenses with the need to analyze whether the defendant's sexual knowledge theory of admissibility would satisfy the remaining two requirements.

[8] See, e.g., *Davis* v. *Alaska*, 415 U.S. 308, 316–17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (Witness credibility may be challenged ''by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony. . . . We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'' [Citation omitted; internal quotation marks omitted.]).

[9] In holding that the sexual conduct evidence was admissible, the court in *Cortes* noted that the rape shield statute did not bar its admission because the defendant was not charged with a sex crime. *State* v. *Cortes*, supra, 276 Conn. 256.

[10] See also *State* v. *Shaw*, 312 Conn. 85, 114–15, 90 A.3d 936 (2014) ("if the jurors heard and believed the defendant's testimony regarding [the victim having sex with her brother], they also might have believed that [the victim and her mother] were motivated to fabricate the alleged assault for the purpose of removing the defendant from the household and covering up [the siblings'] allegedly inappropriate behavior"); *State* v. *Adorno*, 121 Conn. App. 534, 541, 996 A.2d 746 (error to preclude entirely evidence of victim's sexual relationship with boyfriend where "theory of defense [was] that the victim feared that her urinary tract infection was the result of sexual activity and that she falsely accused the defendant so that her sexual relationship with her boyfriend would not be discovered"), cert. denied, 297 Conn. 929, 998 A.2d 1196 (2010); *State* v. *Horrocks*, 57 Conn. App. 32, 39, 747 A.2d 25 ("the preclusion of any cross-examination of the victim concerning her relationship with [the state's investigating detective] improperly prohibited inquiry into a legitimate area of relevant concern"), cert. denied, 253 Conn. 908, 753 A.2d 941 (2000).

[11] See also *State* v. *Wright*, supra, 320 Conn. 821 (trial court violated defendant's sixth amendment rights where "the excluded testimony was the only evidence the defense presented to support its theory of the case"); *State* v. *Colton*, 227 Conn. 231, 241–46, 630 A.2d 577 (1993) (trial court violated defendant's sixth amendment rights when, although it allowed him to ask state's primary witness if she was prostituting herself for drugs and needed reward money from defendant's conviction to fund her habit, it forbade defendant from introducing evidence to that effect when witness flatly denied it).

[12] We note that the holding in *Crespo* is complicated by the defendant's failure to state precisely his theory of relevance at trial in that case. See *State* v. *Crespo*, supra, 303 Conn. 614. For a cleaner holding, albeit outside the context of the rape shield statute, see *State* v. *Mark R.*, supra, 300 Conn. 607–608, 611–13, 615, in which the trial court excluded some but allowed into evidence other aspects of the defense theory of the case—that the child victim falsely accused her father of sexually abusing her either (1) to redirect her mother's attention to her after her mother began devoting her time to the victim's newly adopted siblings; or (2) at her mother's urging so that she could divorce the victim's father—and our Supreme Court affirmed the defendant's conviction on the ground that, even assuming the excluded evidence was relevant, it was not so relevant that its exclusion violated his constitutional rights.

[13] We note that, at trial, the defendant in fact elicited such testimony.

[14] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ." That right is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution, which also independently requires jury impartiality. *Morgan* v. *Illinois*, 504 U.S. 719, 726, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992); *Ristaino* v. *Ross*, 424 U.S. 589, 595 n.6, 96 S. Ct. 1017, 47 L. Ed. 2d 258 (1976).

[15] The defendant also argues in his brief that the seating of D.W. violated article first, § 8, of the Connecticut constitution. He has provided no independent analysis of the state constitution, as required under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), and so we limit our review to the federal constitution. See *State* v. *Dixon*, 318 Conn. 495, 497–98 n.2, 122 A.3d 542 (2015).

[16] Because the defendant had no remaining peremptory challenges when the court denied his challenge of D.W. for cause, this issue is preserved for appellate review. See *State* v. *Kelly*, 256 Conn. 23, 32 n.8, 770 A.2d 908 (2001) (defendant must exhaust peremptory challenges before claiming error in trial court's denial of challenge for cause).

[17] We further note that, contrary to the suggestion of the trial court, a juror *may* properly consider a witness' age as one factor affecting credibility. See, e.g., *State* v. *Ceballos*, 266 Conn. 364, 422, 832 A.2d 14 (2003) ("court instructed the jury . . . that it was solely responsible for assessing the credibility of [the child witness], and that it could consider her age"); *State* v. *Aponte*, 249 Conn. 735, 751, 738 A.2d 117 (1999) (child witness' age relevant to credibility); *State* v. *Angell*, 237 Conn. 321, 331 n.11, 677 A.2d 912 (1996) ("reference to a witness' age or maturity level in [the court's] general instruction on credibility . . . may be appropriate in certain circumstances").